The next case on the call of the docket is agenda number nine. Case number one two seven eight nine four. People of the state of Illinois versus Jose Castillo Natatalia Galicia. Please begin. Natalia Galicia May it please the court, counsel. My name is Natalia Galicia with the office of the state appellate defender and I represent Jose Castillo in this matter. There are two issues before this court today. The first issue involves the meaning of the term public property within the meaning of the aggravated battery statute. The sensible and contextual definition of public property should include references to both accessibility and ownership. Second, this court should rule that the appellate court cannot take judicial notice of a material element when the state has not proven that element at the trial court. As to both issues, this court should reverse the decision of the appellate court. Turning to the first issue, the statute elevates a simple battery to an aggravated battery when it occurs on or about a public way, public property, public place of accommodation or amusement, sports venue, domestic violence shelter, or a place of religious worship. This case centers around the definition of public property and whether a prison cell located in an area that is not accessible to the public constitutes public property. To determine the plain meaning of a term when a statute does not define that to the plain meaning of it. And the best way to determine that is the dictionary definition. But more than that, we must look at the meaning of the term at the time that statute was enacted. The fourth edition of Black's Law Dictionary, which was published seven years after the statute was enacted and published closest to the date of the statute's enactment, defines public property as a designation of those things which are publicized by jurists and therefore considered as being owned by the public, the entire state or community, and not restricted to the dominion of a private person. It may also apply to any subject of property owned by a state, nation, or municipal corporation as such. That definition includes two elements, a property owned by the government and a property that the public has access and dominion over. By focusing only on ownership, the appellate court ignored a fundamental portion of the term. Even the state itself acknowledged that the government-owned definition is imperfect and shouldn't be applied in the strictest legal sense in some cases. The state was referring to an example of a public housing project that would be government-owned property, but it wouldn't be public property because a person, a private person, can say that the public cannot access that place. In making that argument, the state ignored that the plain meaning of the term public property has already encompassed the notion that public property, that in a public property, the public has more access and dominion over an area than a private person. Thus, the plain meaning of the term naturally and sensibly refers to a property that is both owned by the government and accessible by the public. The dual definitions approach also corresponds with the legislative history of the statute. As recognized by the second district and ward, the legislature implemented this category of aggravated batteries to address circumstances that constitute a more serious harm to the community. Are we talking about the property in total or are we talking about parts of the property? Is this now, according to your argument, is this now a two-step analysis? One, does the government own the property? And two, let's look at where the battery took place to see whether or not that specific area is accessible to the public. Yes, Your Honor, that is correct. And that is an analysis that this court has deemed acceptable in other senses. For instance, in the 2016 case of People v. Bradford, this court applied that fact-specific analysis to a case of a store where there were some areas that were accessible to the public, the shopping centers, and there were some that were not accessible to the public, like employees-only area. We are simply asking for that same test to be applied here to determine whether the public can access a certain location. Obviously, in a prison, there are places where the public can visit. Visiting centers would be one of them. But here we have a situation where this occurred in a cell and the state has provided no evidence that the public can access that. Even prisoners needed to be handcuffed and escorted by a guard in order to be in this area. And that was what happened with the inmate, John Eilers, in this case. Well, the public isn't allowed in a prison. I mean, the public just can't walk into parts of a prison and just kind of look around. I mean, the public has to be let in to specific areas. So, I mean, even the common areas of a prison, you know, places where they might have visiting, members of the public, specific members, are allowed in for specific purposes to specific areas. So, are we talking about the public in general or just specific? Because it seems like a prison, you're arguing that a prison has parts where an egg ban would apply and parts where it wouldn't apply. I'm saying, based on your definition, I don't think it would be, the entire prison would be off limits for an egg ban. Well, your honor, the second district in Ojeda dealt with this issue when it talked about public schools. It discussed that there are certain areas where a person can walk into the school and use that school's facilities. Even in a school, people need to show their ID, need to sign into a visitor's lock, need to get permission to be in the area. But that doesn't affect whether they are allowed to go there and to access that place. But Ojeda didn't go the next step, though, did it? It didn't go into whether the particular area of the battery was accessible to the public. No, your honor. Ojeda did not do that. However, in this case, we have a prison where the state has not proven at trial that the public can access that, that prisoners can access that, that anyone can access that without being escorted by a guard or an employee of the facility. And so, because the state has not met that burden, it did not prove Mr. Castillo guilty of this offense. Did the state prove that the convict can go into the spot? No, your honor. The state did not prove that either. In this case, we know that inmate John Eilers was being escorted and handcuffed by a guard, but there's no evidence that any other inmate could access that area, much less access that area. I don't mean other inmates. I mean this particular inmate. He was escorted, right? Yes. Yes, your honor. So the guards and this individual was there? Yes, your honor. So they were in that spot? Yes, your honor. And you're saying because it was only the guards and this particular inmate who was allocated this prison cell, that meant it wasn't public property? Yes, your honor. Even though it's owned by the state of Illinois? Yes, your honor. That is what I'm saying. The public cannot access this location, and so the core concern of the statute was not implicated. And we know that from the analysis in Peeble v. Ward, where the court noted that the legislature implemented this category of aggravated battery based on the committee comments to say that there's more serious harm to the community with these aggravated batteries that occur in open areas than there would be in simple batteries. Here, that core concern of that statute simply was not implicated. So if a public store operation near a visitor center where they are visiting a state museum, if it's an area where only the employees of the facility can have access to, you know, to get items back and forth, that you wouldn't consider a public area? That is correct, your honor, and that would be consistent with this court's analysis in Peeble v. Bradford. Moreover, the context of the statute and the structure of the statute underscores the idea that accessibility was a core concern of the legislature. One form of statutory interpretation that is frequently applied when analyzing the meaning of a term in a statute is masseter associis. This means that a term is known by the company that it keeps. The word public property is sandwiched in between two terms. Public ways, which includes streets and the areas surrounding them, and public places of accommodation, which are places where the public is invited to come in and partake of whatever is being where people are frequently there and where the public can access them. They're open areas. Thus, because the term public property is sandwiched in between those two terms, it is logical that the term public property also refers to a place where the public has access. Why wouldn't the legislature put that in there? The other side is arguing that you're reading that into the statute and it's not there. Well, Your Honor, the legislature did not define the term, but again, the dictionary definition from the time of the enactment does support the notion that the legislature thought that there were two senses of the term public property. And when we consider what the legislature thought that term meant, we cannot use an updated notion, such as from the 11th edition of the Black's Law Dictionary that the state cited to. We must look at it from the perspective of the legislature that enacted the statute. And in that sense, there are these two dual definitions of the term public property. The notion is also... In your, on your position, what are the areas, for example, the state of Illinois owned property are not public property? Well, Your Honor, it would be a variety of areas that the public is not able to access. For instance, this prison where the public certainly does not have access to, but a judge's chambers, while the courtroom might be public property because the public is allowed to come in and watch proceedings, a judge's chambers cannot be considered public property. And again, the public housing example would be another one where it's government owned property, but an apartment within the public housing complex cannot be considered public property because the public simply does not have access to it. And if we consider that in comparison with a private apartment building, it makes no sense why an apartment within a public housing complex should be considered public property simply because of the ownership, whereas a private apartment complex would not be considered public property for the same reason, the ownership. It sounds like a lot of ifs and questions and balancing, of course. Do you think that's a workable test? Yes, Your Honor, I think it is a workable test. I think the state can prove ownership, and I think the state can prove whether the public is able to access an area or not. Even if there are no members of the public there, the state can prove that the public is allowed in a certain area. And so I don't think it's an unreasonable test for the same reason that it's not an unreasonable test in other contexts, like in a department store. I mean, what you're adding to the statute is accessibility. Your Honor, I'm not adding that to the statute. That was already in the definition of the term at the time that the statute was enacted. We can't update the definition of a term based on the understanding of it now. We must look at it from the time that it was enacted, and that definition does bolster the notion that accessibility has to be a part of the equation. Moreover, the committee comments do say that one of the core concerns is that it constitutes a more serious threat to the community than a simple battery, and that logically means that more people would be harmed by an act of nearby violence. And that does not happen when the public does not have access to a particular place. We don't even get to this issue if we find that the state didn't prove that this property was owned by the government. That is correct, Your Honor. And here the state did not do anything to prove that, which brings me to my second issue of judicial notice. Even if this Court does rule that the definition of public property is based solely on ownership, it is entirely improper for the appellate court to take judicial notice of a fact that was not proven at trial. Indeed, when the 4th District issued its ruling, it acknowledged that the record is, quote, devoid of any effort to seek judicial notice that Pontiac was owned by the state. Further, the 4th District acknowledged that the ownership of Pontiac was a material element of the offense. But despite acknowledging that omission occurred in the trial court, the 4th District granted the state's request to take judicial notice of that fact, and subsequently ruled that the state presented sufficient evidence that Mr. Castillo committed aggravated battery. But the state did not do that at the trial court. The state did not ask the trial court to take judicial notice of the fact. The state did not provide a stipulation that Pontiac was owned by the state. The state did not ask one single question of any of its witnesses about who owns Pontiac. And as this Court recently stated in Klein, it is not the function of a court of review to retry a defendant, nor is it permissible for a reviewing court to take judicial notice of material that was not considered by a trial fact. Similarly, it is not the function of the appellate court to take judicial notice of a fact that was not presented before the trial court when determining whether a defendant was proven guilty beyond a reasonable doubt. The ownership of a facility is a material fact. The definition of public property relies in whole or in part that ownership is a necessary element that the state must prove in order to show that somebody was on public property. As this Court stated in both Murray and Mosby, essential elements must be proven and not inferred. Here, the state did not prove that element, and so it should not be inferred or taken judicial notice of by the appellate court. Significantly, this Court acknowledged just three years ago in Murray that the current trend in the appellate court of excusing proof of each element of the offense is in direct conflict with our precedents. This Court also noted that because the state bears the burden of proof, it similarly bears the consequences of any omission of proof. As such, the state should bear the consequences of its omission of proof in this case. And this Court should reject the state's arguments and find that the appellate court cannot take judicial notice of a fact that was not proven at trial. Returning back to the definition of public property, I also want to address that the plain meaning of the term in this present case cannot be found to just to prove that Mr. Castillo was on public property. The state did not prove the ownership of the facility, and the state did not prove that the public was allowed in this area or that other inmates were allowed in this area. And so this Court should find that under either definition of public property, the state did not meet its burden of proof and did not prove that Mr. Castillo was guilty of aggravated battery beyond a reasonable doubt. And if this Court has no further questions, then we would ask again for this Court to reverse the decision of the 4th District. Thank you. Mr. Castillo. Mr. Aaron Williams. Good morning, Your Honors, Counsel. Aaron Williams from the Office of the Attorney General on behalf of the people of the State of Illinois. Okay. I'll start with the statutory interpretation question. This is a fairly straightforward question of statutory interpretation. What does public property mean? What did the General Assembly intend when it made battery aggravated on public property in 1968? The answer is actually very straightforward. It is property owned by the public, just as private property is property owned by a private party. That is the plain, commonly understood definition of the term. The vast majority of dictionaries will tell you that, the vast majority of which will not tell you that it has to be accessible to the entire public or part of the public or the general public. That includes, by the way, the so-called dual definitions from the earlier editions of Black's Law Dictionary, on which a defendant places so much reliance and names his proposed test after them, which is interesting because he doesn't apply either of them. Neither of those tests, neither of those definitions say anything about accessibility to the public. The first one is, it says, things considered to be owned by the public, the state or the community, and not restricted to the dominion of a private individual. Things considered to be owned by the public, not open to the public. Now, it is true that there is a difference between that and the second definition, but the difference is not public accessibility. The difference is a subtle difference as to what kind of ownership we're talking about. Are we talking about a more formal sort of ownership, what the second definition calls something owned by a nation, state, or municipal corporation as such? Fee simple title, essentially. Or are we talking about a more functional sort of concept of ownership? Who has the rights that we characteristically associate with ownership? The bundle of sticks. Who has the control of it? Who has the right to access it and use it? Who has the, and if a private, yes, so to counsel's example, yes, it is true. I would certainly agree that within the meaning of this statute, you are not at all required to say that an apartment in a public housing complex is public property. But that is not because it is not open to the public. That is because a private person has rights in it. Under the first definition, they have dominion over it. They have the right to use it for their own private residential purposes. They have a right to exclude other people from it. In a functional sense, that is private property regardless of what the title says. That is not publicly owned property. No, so there are, this statute is not, this phrase is not ambiguous in any sense that would be relevant here. To the extent that it is ambiguous at all, there is a slight difference as to what kind of ownership you could be talking about. But the prison here is owned by the state of Illinois under any kind of ownership standard you could ever want to apply. And no, there is, it is not a common, it is not part of any commonly understood definition of public property that it must be accessible to the public. That is something that the defendant must read in to the statute. Okay, so I would be remiss, I won't talk about all of the legislative history, although I'm happy to answer questions about any of it. But I would be remiss if I didn't say something about this committee comment on which defendant bases so much of his argument. Initially, this committee comment was drafted in 1961. It actually predates the relevant statutory provision we're interpreting today by seven years. So neither defendant nor any of the cases which he cited ever explained why that comment would say anything relevant about what the General Assembly intended when it made battery aggravated on or about a public way, public property, or a public place of accommodation or amusement in 1968. Having said that, though, a battery on public property does constitute a greater threat to the community in the sense that that committee comment was talking about. It's important to realize that that committee comment was talking about the entire second category of aggravated batteries, which was almost all aggravated battery at the time. And you cannot interpret the committee comments, the remark that these are circumstances which constitute a greater threat to the community as meaning a greater threat of direct physical violence to a crowd of people or direct physical harm to most of the community. That would render most of the provisions that were in that statutory subsection the comment was talking about unintelligible. For example, there was a provision in the statute at the time that made battery aggravated when committed against teachers. There's another one for peace officers, firefighters. A battery on a teacher does not in itself present a greater risk of physical harm to a crowd of people or to some representative subsection of the community or whatever it is that general public means. No, no, it is harmful because teachers perform a public function which is important to the legislature. They educate children and battery teachers interferes with that children. In much the same way, battery on public property also interferes with that function. Battery in a public school, it interferes with the education of children, regardless of who the victim is. Now, and that brings me to the purpose of this provision, which is also self-evident from the plain meaning of publicly owned property. It's important to remember that by definition and as a matter of law, all government owned property must be used for a public purpose. That is in Article 8, Section 1 of the Illinois Constitution. All public funds and property must be used for a public purpose. Everything that the government owns is something that democratically elected representatives have determined serves the public. So the reason for making battery aggravated on government owned property is essentially the same reason why the government owns property to begin with. It serves important public purposes and the legislature does not want those to be interrupted by acts of violence and also does not want harm to come to the public officials carrying them out. Brings me to some of the defendant's structural arguments. No severe associates. I've heard it pronounced about four different ways, so I'm not sure what the canonical pronunciation of that is. That is an apposite here. Right, so the structure of the statute, I should say first, the legislature already included the three phrases they enacted in 1968, the other location-based aggravators. Those were added many decades later. The original three, a public way, public property, public place of accommodation or amusement. The General Assembly already used a phrase that included public place in it, public place of accommodation or amusement. So I don't dispute the proposition that the General Assembly thought that batteries in public places were a greater threat to the community. It had a term that effectuated that intent. That was the third one. We're talking about what public property means. And defendant, as Justice Burke pointed out, is essentially trying to create some two-stage test where we first ask, is it public property? Is it government owned? And then do we ask, is it also a public place? And notably, that is actually the analysis that courts perform with respect to the third term, public place of accommodation. They do tend to analyze whether the particular part of a, whether a particular location where someone was battered was public in that way. Defendant is trying to conflate the two. And no, these are not just mere examples of places that are open to the public. That's not what these are. These are different in a number of ways. They differ with respect to who can access them. I mean, a public way is, by definition, accessible to everyone. A general public place of accommodation, most people. Public property, not necessarily anyone or only certain subsets of people. And they differ with respect to what goes on there. I mean, a public way, it's not just a place where people gather. It's also a place where there's motor vehicle traffic. I mean, the kinds of places that fall into each of these categories are different. This is not just a list of examples of crowded places. These are three separate categories of places that serve various public functions that the legislature does not want to interfere with. And they also have various characteristics which can make battery more dangerous, for one reason or another, like motor vehicle traffic in public ways. So no, this list is just too short, and its members are too different from each other to presume that the legislature intended to redefine public property to mean publicly accessible public property. And they certainly knew how to make that concept clear in other statutes when they wanted to illustrate it. When they wanted to narrow public property to mean government property that's also publicly accessible, there are statutes where they made that very clear by listing a bunch of examples of government property which is also open and then saying other public property to show that that's the kind that they meant. Here they didn't do that. They just used the unqualified phrase public property, which means publicly owned property. How do we know it's publicly owned? The second issue. All right. Yes. So that brings me to the second issue. Yes, sufficiency of the evidence. I should say that the sufficiency of the evidence standard, which the defendant does not acknowledge, is very well established. That is whether taking all of the evidence in a light most favorable to the prosecution could any rational trier of fact find the element proven beyond reasonable doubt. Yes, taking all the evidence in a light most favorable to us, a rational fact finder could certainly find that this was government owned property. There was evidence in the record from which a rational trier of fact could reasonably infer that this prison was run by the Illinois Department of Corrections and that it housed inmates in the custody of the Illinois Department of Corrections. This was a state prison. It was run by a state administrative agency, housing inmates in our custody. You could reasonably, a rational trier of fact could certainly reasonably infer that the state owns a state prison. We do own all of them. Yeah. Nobody else would conceivably own one. Yes. To the defendant's point, the citation of People v. Murray and Mosby, the defendant takes those out of context. No. The court has said many times the governing standard for sufficiency of the evidence, how you determine whether we have established something for purposes of due process, that's the Jackson standard. And this court has also recognized many times that part of that standard is that all reasonable inferences must be made in favor of the prosecution. No, there is no rule that you cannot establish an element through inference. That's tantamount to arguing that due process requires direct evidence as opposed to circumstantial evidence. There is no such requirement. There is no such requirement that would prevent a rational trier of fact from reasonably inferring that the state owns a state prison. I mean, the fact that prisons are governed on property, that is, well, to use the example from the last case, that is like the sun setting in the west. That is a matter of common knowledge. It's just a basic fact about the structure of government that everyone knows. There are private prisons. I mean, you know that. There are privately operated prisons. Not in Illinois, but yes. Not for prisoners in state custody. They're absolutely illegal. I know. There's no evidence of that in the record. Yeah. No. No. But no. But also they – well, no. No. But it would also be a matter of common knowledge, I would think. And even if it isn't, no. It's – no. There are no privately operated – no, this was not a privately operated prison. I mean, clearly there was evidence showing that this was not a privately operated prison. I mean, there were testimony from employees at the Illinois Department of Corrections saying that they ran the security there, that they investigated crimes there, and the security footage that depicted it, that was in the custody of employees at the IDOC. That's – no. That's – no. In terms of operation, no. The evidence actually, no, clearly proved that, no, this was a state-operated prison. No. That brings me to – I want to revisit just briefly the statutory interpretation issue and some of the difficulty inherent in defendants' proposed approach. Not only is there no relevant ambiguity in this statute because it is not a part of the commonly understood definition of public property that it must be open to the public, defendants – if there was any ambiguity, defendants' proposed approach does not resolve any of that. It actually creates ambiguity, at least three forms of it that I can count. One, how much of the building needs to be open to the public? Two, how much of the public does it need to be open to? What does general public mean? Three, how often does it need to be open at the time of the battery? I mean, if we're also saying that it needs to be open, that the particular part of the property needs to be open, are we going to analyze the – have a more strict temporal component and say that it has to be open at the time when the battery occurs? I mean, that would make sense of that logic. There's no more textual basis for it than reading an accessibility requirement into public property. But no, defendant does not answer really any of those questions. Well, he attempts to answer the first one by saying that we don't need to ask how much of the property in general is open to the public. Just focus on whether the part of the property where the battery occurs was open. Yeah, that would lead to – the problem with that is that would lead to some rather absurd results like, well, like counsel admitted battery in counsel's chambers in a courtroom, or in a courtroom, yeah, the judge's chambers in a courtroom. That is not public property. Like, the more sensitive and restricted parts of government-owned property that are more closely related to the governmental functions for which that property exists to serve, those are less protected. Is there any reason why the General Assembly would require proof of government ownership and also intend for that? It's – no, the problem with this is that – no. The problem with this is that 40 years ago, the court just conflated public property with public place of accommodation or amusement, and they've been dealing with some of the problems with that ever since. Mostly the courts have actually addressed that by now. Most districts of the appellate courts have now just held that this means government-owned property. But, no, if you say that the purpose of the entire statute as a whole is to protect crowded places, that requires ignoring the plain language not only from the property but the surrounding language, and that requires ignoring the self-evident intent inherent in requiring that property – that battery on government-owned property must be aggravated. There's no reason to have a government ownership requirement at all if you're just – if all you care about is public openness. About – if there are no further questions, I'm happy to answer any. I think we would simply ask the court to affirm. Would you say you're trying to expand the idea of public property? No. No. I'd say it's – this is always the plain, commonly understood definition of public property is that it's just publicly owned property. If anything, we propose that the court could narrow it past what it might be considered in the strict legal sense of fee simple title. So, yes, the fact that an institution or a city owns a building in the fee simple title does not necessarily have to mean that something would be considered in the more practical and functional sense to be public property. So in that sense, it would be narrower, but – or it could be narrower, but – and I would agree in that sense that the first definition in Blacks is actually the more representative of the commonly understood definition of the phrase because I don't think most commonly – most people would not – when they think ownership, they do not think, oh, whose name is on the deed or what fee simple title. It's more of a who has the rights to it. So in that sense, I would agree that the first definition in Blacks would be the more relevant one, which is why – That would be the more relevant one rather than the more expansive one. Rather than the fee simple title one, yes. So in that sense, I suppose it would be slightly narrower, although in most cases it would be the same. In most cases, yes, something that is owned – the legal sense is also – would also be owned in any practical, functional sense. Because in your argument, it seemed like there would be some outliers that were more expansive. I don't – I'm not sure if I – I guess I'm not sure if I follow. No, I guess to the extent – I guess the one way it could be conceivably broader is if – and this would be a sort of corollary to a more functional approach of ownership. I guess you could say that under a more functional definition of ownership, if a government leased property but had so much control over it that they have – they functionally owned it. So I guess under that sense, you could say that it might be broader than some definitions if you could interpret it to include leased property, but that would not be an issue here. Thank you, counsel. Thank you. Ms. Gallagher. Your Honors, I have a few points on rebuttal. First, the state would like to characterize this term as having no ambiguity. However, there is a circuit split for the reason that there is ambiguity. Ward, Blackburn, Ojeda, even Wells to some extent, acknowledged that accessibility should be part of the equation in some cases. The other cases, Hill, Messenger, and Wells only defined it by ownership. So there is some ambiguity as to this term that must be dealt with. As to the state's comment that the self-evident reason behind this statute was to protect sensitive government functions, there is a reason why the state cannot point to any committee comment, any legislative history, any proof that this is self-evident. The only way that the state can prove this is through its own inferences. But we are here to determine what the legislature intended, and the way that we can do that is through actual committee comments, actual legislative history, actual structure of the statute, not through self-evident inferences. As to the legislative history, it's not just the committee comments that go to what the legislature intended with this statute. In the 1970s, the statute was amended to include a provision designed to protect correctional officers. The specific incident that led to that amendment was a battery against a medical technician at Dwight Correctional Facility. During the hearings about the addition, the legislature noted that this situation was not already covered by the statute. If public property was only meant to include government-owned property without any reference to accessibility, then that situation certainly would have been covered under this provision, and that comment by the legislature would not have been necessary. As to the second issue, the state noted that this was common knowledge. However, this is common knowledge to the judiciary maybe, but not to a layperson. Laypeople know that there is a private prison problem in the United States. A layperson might not know that Illinois in particular does not have private prisons. Moreover, there are detention centers in Illinois that are privately operated, such as the ICE detention centers that were debated in the 2019 amendments to the statutory code. The ownership of IDOC cannot be inferred. That is a fact that the state needed to prove under any definition of public property, and the state did not do so. The state did not ask that one question, who owns this facility? The state did not ask the court to take judicial notice of the ownership, and the state did not ask the court to consider a stipulation about the ownership. The state did not do that, and the state did not meet its burden. To rely on inferences now, even when the appellate court itself noted that the state did not do that, that the record was devoid of that asking of judicial notice, is improper, and the state did not meet its burden of proving Mr. Castillo guilty beyond a reasonable doubt. And if there are no further questions, we would again ask for the support to reverse the decision of the 4th District. Thank you. Case number 127894, People of the State of Illinois v. Hull City, Castillo, will be taken under advisement by the court and known as agenda number 9. Thank you, Ms. Gellicka and also Mr. Williams for your arguments this morning.